AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| In the Matter of the Seizure of <br> *(Briefly describe the property to be seized)* <br> ALL FUNDS (UP TO $125,561.00) ON DEPOSIT IN TD BANK ACCOUNT # 4359281288, HELD IN THE NAME OF ANDREW LEON COOPER JR. | Case No. 22-sz-4 |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the jurisdiction of the District of Columbia is subject to forfeiture to the United States of America under _____ U.S.C. § _____ *(describe the property)*:
21 U.S.C. § 881(a)(6); 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 984; 18 U.S.C. § 981(b)

(describe the property): ALL FUNDS (UP TO $125,561.00) ON DEPOSIT IN TD BANK ACCOUNT # 4359281288, HELD IN THE NAME OF ANDREW LEON COOPER JR.

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

☐ Continued on the attached sheet.

*David L. Crosby*
Applicant's signature

David L. Crosby, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 03/09/2022

*Judge's signature*

City and state: District of Columbia       Zia M. Faruqui, United States Magistrate Judge
*Printed name and title*

AO 109 (Rev. 12/09)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
для
District of Columbia

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>ALL FUNDS (UP TO $125,561.00) ON DEPOSIT IN TD BANK ACCOUNT # 4359281288, HELD IN THE NAME OF ANDREW LEON COOPER JR. | Case No. 22-sz-4 |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the jurisdiction of the District of Columbia be seized as being subject to forfeiture to the United States of America. The property is described as follows:
ALL FUNDS (UP TO $125,561.00) ON DEPOSIT IN TD BANK ACCOUNT # 4359281288, HELD IN THE NAME OF ANDREW LEON COOPER JR.

AS FURTHER DESCRIBED IN THE AFFIDAVIT

I find that the affidavit and any recorded testimony establish probable cause to immediately freeze the account and seize the funds held in the account.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____
*(not to exceed 14 days)*

☐ in the daytime – 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge  Zia M. Faruqui .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 03/09/2022                         _____
                                                          *Judge's signature*

City and state:  District of Columbia              Zia M. Faruqui, United States Magistrate Judge
                                                          *Printed name and title*

AO 109 (Rev. 12/09)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: 22-sz-4 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>                                                                                             _____<br>                                                                                             *Executing officer's signature*<br><br>                                                                                             _____<br>                                                                                             *Printed name and title* |

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF ALL FUNDS (UP TO $125,561.00) ON DEPOSIT IN TD BANK ACCOUNT # 4359281288, HELD IN THE NAME OF ANDREW LEON COOPER JR.** | Case No. 22-sz-4<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEIZURE WARRANT**

I, David L. Crosby, being first duly sworn, hereby depose and state as follows:

**Introduction**

1. I make this affidavit in support of an application for a seizure warrant for up to $125,561.00 in funds held in TD Bank Checking Account #4359281288, in the name of "Andrew Leon Cooper Jr.." (TARGET ACCOUNT), as further described in Attachment A.

2. For the reasons set forth below, I submit that there exists probable cause to believe that $125,561.00 in proceeds of controlled substance sales were deposited into the TARGET ACCOUNT between August 3, 2021, and November 10, 2021, and that up to this amount of funds on deposit in this account is therefore subject to forfeiture to the United States under Title 21, United States Code, Section 881(a)(6) (authorizing civil forfeiture of proceeds of sales of controlled substances), Title 18, United States Code, Section 981(a)(1)(C) (authorizing civil forfeiture of proceeds of sales of controlled substances), and under the fungible-property provisions of Title 18, United States Code, Section 984. I further submit that the funds are subject to civil seizure under Title 18, United States Code, Section 981(b).

## Agent Background

3. I have been employed as a Special Agent with the Drug Enforcement Agency (DEA) since August 1991. I am presently assigned to the Washington Division Office, Task Force Group 34 of DEA. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct investigations of, and to make arrests for, among other offenses, the offenses enumerated in Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Section 1956.

4. As part of my employment, I have received specialized training in investigating federal narcotics violations, including, but not limited to: drug identification, use of informants, surveillance techniques, search warrant procedures, money laundering crimes, and investigative techniques used in the investigation of individuals and organizations involved in the illegal manufacture and distribution of controlled substances.

5. During my employment as a DEA Special Agent, I have investigated violations of controlled substance laws under Title 21 of the United States Code and related offenses. I have personally been involved in numerous criminal investigations related to trafficking in controlled substances, such as heroin, cocaine, cocaine base, fentanyl, marijuana, and other drugs. I have participated, as an affiant or participant, in the execution of numerous search warrants that have resulted in the seizure of controlled substances and evidence later used in criminal prosecutions. Evidence searched for and recovered in these locations has included controlled substances; records pertaining to the generation of drug proceeds, the attempted concealment of drug proceeds, and the expenditures of those proceeds; monetary instruments; and various assets that were purchased with the proceeds of drug trafficking. Furthermore, during the course of my

employment, I have personally spoken with traffickers, have had numerous discussions with other experienced law enforcement officers, and have conducted or been present at numerous interviews of self-admitted illegal drug traffickers and cooperating defendants concerning the manner in which drug traffickers and money launderers operate.

6. My experience in investigating this and other cases involving the sale of illicit drugs, including Fentanyl, reveals generally that manufacturers and distributors of illegal drugs typically have substantial profit margins on the sale of, and earn substantial amounts of profits from the sale of illegal drugs.

7. Based on my training and experience, I know the following:

   a. Individuals involved in illegal sales of controlled substances or other unlawful activities often generate large amounts of criminal proceeds.

   b. Individuals involved in the manufacture, distribution, and sale of illegal products, such as narcotics, often utilize a large amount of cash transactions to conduct business in an attempt to avoid detection and to finance their on-going business operations.

8. Individuals involved in illegal activities often attempt to place their ill-gotten proceeds into a financial institutions to utilize its attendant services and integrate the illegal proceeds into the financial systems of the United States and foreign governments. Frequently, these individuals have some sort of legitimate income or funds, and co-mingle their illegal profits with their legitimate funds. This helps to conceal the illegal source.

9. All the information contained in this affidavit is derived from my personal knowledge and observations, from information provided by witnesses and other law enforcement officers, or from third-party records. I believe this information to be both reliable and credible.

This information is provided for the limited purpose of establishing probable cause and is not a complete statement of all the facts related to this case.

## Statutory and Financial Background

**Fentanyl Distribution**

10. Title 21, United States Code, Section 812 (c)(b)(10) codifies Fentanyl as a Schedule II controlled substance.

11. Title 21, United States Code, Section 841 provides as follows:

> [I]t shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
> (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

**Asset Forfeiture**

12. Title 21, United States Code, Section 881(a)(6) provides that all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation Title 21, United States Code, Sections 841, 846 or 856, and all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate the illegal activity are subject to forfeiture by the United States.

13. Title 18, United States Code, Section 981(a)(1)(C), via cross-reference to Title 18, United States Code, Section 1956(c)(7), provides that any property, real or personal, which represents or is derived from proceeds traceable to proceeds of the sale or distribution of a controlled substance, are subject to forfeiture to the United States.

14. Title 18, United States Code, Section 981(b) provides that any property subject to forfeiture to the United States under Section 981(a) may be seized by the Attorney General of the

United States and that such seizures shall be made pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure. In turn, Federal Rule of Criminal Procedure 41(d)(1) provides that a magistrate judge must issue a warrant if, after reviewing an affidavit, there exists probable cause to seize the subject property.

15. Title 18, United States Code, Section 984 provides that a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

16. Section 984 (a) provides in part:

> (1) In any forfeiture action *in rem* in which the subject property is cash [or] funds deposited in an account in a financial institution -
>
>> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>>
>> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

17. Title 18, United States Code, Section 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

18. Thus, under Section 984, a court may order the forfeiture of monies found in a bank account into which forfeitable deposits had been made, up to the amount of the forfeitable

deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

## Facts in Support of Probable Cause

19.  In May 2021, an investigation was launched, by the Fairfax County Police Department, the Drug Enforcement Administration, and the Federal Bureau of Investigation, targeting the drug trafficking activities of Andrew Cooper. Cooper was suspected of supplying Fentanyl linked to various overdoses in Virginia and Washington DC.

20.  On August 9, 2021, a Fairfax County undercover detective was introduced to Andrew Cooper for the purpose of purchasing Fentanyl by a Fairfax County Confidential Source. At this time, approximately 1 gram of suspected Fentanyl was purchased from Andrew Cooper for $100. This purchase took place on Capitol Ave, Northeast, Washington DC. The suspected substance was sent to the DEA Mid Atlantic Laboratory and found to be .87 grams of Fentanyl.

*21.*  On August 25, 2021, the Fairfax County Police undercover detective contacted Andrew Cooper to arrange for the purchase of Fentanyl. The Detective subsequently drove to Capitol Avenue in Northeast, Washington DC, and parked near 1942 Capitol Avenue. A short time later, Cooper exited 1942 Capitol Street and walked over to the undercover vehicle. Cooper was given $300 and he handed the Detective a bag with a white powder substance. The substance was analyzed by the DEA Mid Atlantic Laboratory and found to be 3 grams of 8% pure Fentanyl.

22.  On September 8, 2021, the Fairfax County Police undercover detective contacted Andrew Cooper to arrange for the purchase of Fentanyl. The Detective subsequently drove to Capitol Street in Northeast, Washington DC and parked near 1942 Capitol Street. A short time later Cooper exited 1942 Capitol Street and walked over to the undercover vehicle. Cooper was given $400 and he handed the Detective a bag with a white powder substance. The substance

was sent to the DEA Mid Atlantic Laboratory for analysis and was found to be 3.25 grams of Fentanyl.

23. On September 20, 2021, the Fairfax County Police undercover detective contacted Andrew Cooper to arrange for the purchase of Fentanyl. The Detective subsequently drove to Capitol Street in Northeast, Washington DC, and parked near 1942 Capitol Street. A short time later, Cooper exited 1942 Capitol Street and walked over to the undercover vehicle. Cooper was given $800 and he handed the Detective a bag with a white powder substance. The substance was sent to the DEA Mid Atlantic Laboratory for analysis and was found to be 6 grams of Fentanyl.

24. On October 21, 2021, the Fairfax County Police undercover detective contacted Andrew Cooper to arrange for the purchase of Fentanyl. The Detective subsequently drove to Capitol Street in Northeast, Washington DC and parked near 1942 Capitol Street. A short time later, Cooper exited 1942 Capitol Street and walked over to the undercover vehicle. Cooper was given $1,050 and he handed the Detective a bag with a white powder substance. The substance was sent to the DEA Mid Atlantic Laboratory for analysis and was found to be 14.99 grams of Fentanyl.

25. During the aforementioned time period, the Federal Bureau of Investigation installed a covert video camera (pole camera) with a view of the outside activities at 1942 Capitol Ave, NE, Washington DC. Based on your affiant's training and experience, a review of the pole camera video shows Cooper regularly meeting with various individuals and selling narcotics from his residence.

26. A review of cell-site data for Cooper's phone reveals that Cooper spent the majority of his at 1942 Capitol Ave, NE, Washington DC. The data reveals extremely limited

trips (in both duration and frequency) from Cooper's residence, which indicates that Cooper could not be regularly employed outside of his residence.

27. On October 7, 2021, search warrant 21-sc-3218 was signed by U.S. Magistrate Judge G. Michael Harvey for the search of Andrew Cooper's iCloud Account. Located in Cooper's iCloud were photos of checks for the TARGET ACCOUNT, as well as several short videos of large amount of cash being displayed.

28. On November 9, 2021, a grand jury in the District of Columbia returned an indictment and arrest warrant against Andrew Cooper charging him with five counts for Distribution of Fentanyl, in violation of 21 U.S.C. § 841(a)(1) in Criminal Case No. 21-665-APM.

29. On November 10, 2021, Cooper was arrested at 1942 Capitol Ave, NE, Washington DC and a search warrant, 21-sc-362, was executed at 1942 Capitol Ave, NE, Washington DC. During the search warrant, agents seized 224.28 grams of Fentanyl (analyzed by the DEA Mid Atlantic Laboratory), 50 suspected Counterfeit Oxycodone tablets found to contain 9.83 grams of Fentanyl Analogue (Analyzed by the DEA Mid Atlantic Laboratory), 391 gross grams of suspected cocaine, and 62 gross grams of suspected crack cocaine. In addition, agents also seized a 9mm Ruger handgun and a safe containing $81,324 in cash and a money counter, which had been displayed in one of Cooper's iCloud videos. During the search, agents also seized a bank statement for the TARGET ACCOUNT.

30. In a post arrest interview, which began with several general questions, Cooper admitted that he lived at 1942 Capitol Avenue, Apartment 102, and that he lived by himself. Cooper further admitted that he was not employed and that he did not receive or collect any government assistance. Cooper also said that he did not take any drugs. When agents stated that

a large amount of cash was found in the house and asked Cooper to explain where the money came from, Cooper did not say anything in response.  Cooper was shown a photograph of Oxycodone tablets found in 1942 Capitol Ave.  These pills were subsequently analyzed by the DEA Mid Atlantic Laboratory and found to contain a Fentanyl Analog.  Cooper admitted that he purchased the pills for $10 apiece, sold them for $15 apiece, and did not have a prescription.  Cooper was shown another photograph of suspected drugs inside 1942 Capitol Avenue and he admitted that the drugs were crack (cocaine).  Cooper was asked about the hand gun found inside his residence and Cooper said that he paid $200 for the gun and that he purchased the gun to "protect myself."  Cooper was asked if he was doing anything besides selling drugs to make money and he did not answer.  Cooper was shown a photograph of the safe from 1942 Capitol Ave, opened with the money inside.  Cooper was asked about his source of income and he did not acknowledge any other source of income besides the distribution of drugs and lowered his head.  Cooper was asked if it was fair to say that the money came from selling the items agents seized from his house (various drugs).  Cooper did not say anything, but nodded in the affirmative.   Almost immediately after agents began asking additional questions about Cooper's finances, Cooper terminated the interview.

31. On November 18, 2021, a Grand Jury Subpoena was issued to TD Bank for information concerning the TARGET ACCOUNT.  The requested records were received on March 1, 2022.  These records show that the TARGET ACCOUNT is held in the name of Andrew Leon Cooper Jr. and that the account was opened in December 2018.

32. An examination of the records reveal that in August 2021, just before law enforcement began making undercover Fentanyl purchases from Cooper, the TARGET ACCOUNT held a balance of $5,937.44.  Between August 3, 2021 (when law enforcement

began making controlled purchases from Cooper) and when Cooper was arrested in November, 2021, the TARGET ACCOUNT received $125,561.00 in *cash* deposits. Records reveal a total of 114 *cash* ATM Deposits (totaling $16,611.00) and 5 bank *cash* deposits (totaling $108,950.00) for total deposits of $125,561.00 in *cash* deposits. The in-person bank cash deposits were made by Cooper, according to the deposit slips.

33.     After Cooper's arrest, all deposits ceased. The TARGET ACCOUNT currently has a balance of $39,788.30 as of January 20, 2022.

34.     Your affiant believes that 100 percent of the total amount deposited (125,561.00) between August 3, 2021, and November 10, 2021, represent proceeds of Cooper's illegal drug sales, based on the following summary of the evidence detailed above:

   a. Between August 3, 2021 and November 10, 2021, law enforcement observed Cooper on pole camera engaging in numerous suspected narcotics transactions on a daily basis outside of his residence at 1942 Capitol Ave.

   b. Between August 3, 2021 and October 21, 2021, law enforcement purchased Fentanyl from Cooper on five separate occasions in increasing quantities.

   c. On the date of his arrest, Cooper was found with substantial amounts of Fentanyl, crack cocaine, and cocaine inside his residence, along with approximately $80,000 in cash, as well as a cash counter and a safe.

   d. Cooper admitted to law enforcement that he does not have a job, does not collect any Government assistance, and sells narcotics for a profit. When asked by law enforcement if it was fair to say that the $80,000 seized from his residence came from selling the narcotics seized from his house, Cooper nodded in the affirmative.

    e.    The fact that Cooper made $125,561.00 in *cash* deposits is consistent with the regular practice of narcotics traffickers who, based on my training and experience, regularly receive payment for their narcotics in cash because the cash cannot be traced.

    f.    A review of cell-site data for Cooper's phone reveals that he only left his residence on limited occasions for short durations. The cell-site data is consistent with Cooper not maintaining any sort of employment outside his residence, which he admitted. The cell-site data is also consistent with Cooper being regularly present at his residence to engage in narcotics sales as further corroborated by pole camera surveillance, the five controlled buys of Fentanyl in this case, and the narcotics and cash seized from Cooper's residence.

## Conclusion

35.    Based on the foregoing, I submit that there exists probable cause to believe that $125,561.00 in funds deposited into TD Bank Checking Account #4359281288, held in the name of "Andrew Leon Cooper Jr.", which were deposited into that account between August 3, 2021 and November 10, 2021, represent proceeds derived from Andrew Coper's sale of Fentanyl, and are therefore subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) as well as the fungible-funds forfeiture provisions of 18 U.S.C. § 984.

36.    I further submit that the funds are subject to seizure under 18 U.S.C. § 981(b).

37. For these reasons, I respectfully request that the Court issue a warrant authorizing the seizure of all funds in the TARGET ACCOUNT (up to $125,561.00) held in TD Bank Checking Account #4359281288, held in the name of "Andrew Leon Cooper Jr."

Respectfully submitted,

*David L. Crosby*
David L. Crosby
Special Agent
Drug Enforcement Administration

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on March 9, 2022.

_____
HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE